McMILLAN, Judge.
This is an appeal from a murder conviction.
In October 1987, appellant was indicted by a Fayette County grand jury for the murder of her husband, Steve Fowler, in violation of § 13A-6-2, Code of Alabama (1975). In May 1988, appellant was found guilty in a jury trial of the offense charged, and she was thereafter sentenced to a term of life imprisonment.
The appellant argues that the trial court erred by allowing W.A. (Bill) Fowler, the victim’s father, to testify on rebuttal about a tape recorded conversation between the appellant and a person identified only as “Jerry.” She argues that Mr. Fowler’s testimony was inadmissible, because, she says, the recording it described was itself the product of illegal electronic surveillance, because the tape recording had not been authenticated, and because this testimony was hearsay. Because we agree with the appellant’s contention that the testimony of Mr. Fowler was hearsay, and thus, inadmissible, this case is due to be reversed and this cause remanded for a new trial.
The record indicates that, prior to the murder, the appellant and the victim were experiencing severe marital problems. These problems allegedly resulted from an affair the victim had been involved in about four years earlier, but which had only recently been discovered by the appellant. Several witnesses testified for the prosecution that, approximately ten days before his death, the victim had suffered a black eye and gouge marks on his head and forehead, apparently during a fight with the appellant. These witnesses also testified that the appellant did not appear to have been injured in the fight. David Grayson, who worked with the victim, further testified to seeing new scratch marks on the victim three or four days before his death, and stated that he also saw a bruise on the appellant’s arm during this same period of time.
On direct examination, the appellant testified that she and the victim had never had any physical fights during their marriage until she learned of his affair. Thereafter, the appellant testified, she and the victim had had several fights in which they hit each other.
On cross-examination, the prosecution asked the appellant whether she had ever had a conversation in which a man said, “Well, I see you’ve given him a black eye” and in which she replied, “Yes, and the next time I’m going to kill him.” The appellant responded to the prosecutor’s question by stating “No, sir, I never said that.”
On rebuttal, W.A. (Bill) Fowler testified that he saw the victim on the Friday morning before his death. At this time, Mr. Fowler testified, the victim played for him a tape recording made of a conversation between the appellant and a person named “Jerry.” Mr. Fowler testified as follows:
“Q. Did you recognize any voice on the tape?
“A. Yes, sir, I recognized Barbara’s voice.
“Q. All right. Will you then state to the jury what you heard on the tape?
“A. Well, first I heard a door slam adn [sic] she says “come in, Jerry” and he *668 said, “Well, I see you give our boy a black eye.” She says, “Yeah, and the next time I’m going to kill him.” And, then, of course, Steve and I both, he went all to pieces and he finally turned the tape off. I didn’t hear the rest of it.
“Q. Do you know where the tape is now, Mr. Fowler?
“A. No, sir, I sure don’t.
“Q. Have you been able to find it?
“A. No, sir.
“Q. Did you look for it?
“A. Yes, sir.”
The record fails to state who made the alleged recording, or whether the victim was present at the time the conversation allegedly occurred.
Initially, this Court notes that the appellant’s arguments that Mr. Fowler’s testimony was inadmissible because the tape recording was the result of illegal electronic surveillance and because the prosecution did not authenticate the tape were not raised at trial. Therefore, these issues are not preserved for our review. Kennard v. State, 531 So.2d 938, 940 (Ala.Cr.App.1988); Bolding v. State, 428 So.2d 187, 191 (Ala.Cr.App.1983).
The State argues that the appellant’s statement that “the next time I’m going to kill him” evidences a design or emotion which points to her guilt, and was thus properly allowed into evidence as an admission. C. Gamble, McElroy’s Alabama Evidence, § 264.01(1) (3d ed 1977); Smith v. State, 513 So.2d 1036, 1044 (Ala.Cr.App.1987). We note, however, that this Court has under exceptional circumstances refused to apply the above-stated rule, where to do so would deprive the accused of his constitutional rights to confront and cross-examine witnesses against him.
In Arthers v. State, 459 So.2d 972 (Ala.Cr.App.1984), the trial court, pursuant to § 12-21-5, Code of Alabama (1975), admitted into evidence a number of hospital records pertaining to events which took place the night before the murder for which the appellant was convicted. One of these documents was an emergency room record on which the following handwritten notation as made: “despondant [sic] — stated that he would kill his wife is she didn’t take the pills.” The appellant alleged that the notation was inadmissible hearsay since the person who had made it was not available in court for confrontation and cross-examination. In reversing the judgment of the trial court, this Court held the following:
“This section does not authorize the admission of all hospital records without exception. Whetstone v. State, 407 So.2d 854 (Ala.Crim.App.1981). The rules of evidence apply to the contents of any record qualified under this statute and the accused may object to any portion of records admitted under this code section. Whetstone, supra. (For a related discussion see the annotation at 69 A.L.R.3d 22 (1976.) It is true that ‘a statement by the accused, before the time of the alleged criminal act, asserting a design or emotion in him which points to his guilt is admissible against him as an admission.’ C. Gamble, McElroy’s Alabama Evidence, § 264.01 (3d ed 1977). However, as this court has previously pointed out, an exceptional circumstance may exist where the contents of a hospital record are used to prove a material element in a criminal prosecution; in such case there arises a ‘strong probability’ that a defendant may be denied his constitutional right to cross-examine and confront a witness. Lowery v. State, 55 Ala.App. 514, 317 So.2d 365, cert. denied, 294 Ala. 763, 317 So.2d 372 (1975).
“A defense theory of the case is that appellant accidentally shot his ex-wife when he stepped up on a chair to remove a gun from a rack and the chair broke.
“Certainly a statement made by Arth-ers that he would kill his wife if she did not take pills would be impossible for the jury to ignore; the statement was extremely relevant to prove intent, a material element under our murder statute. See Ala. Code Section 13A-6-2(a)(l) (1975).
[[Image here]]
*669 “In the instant case, there was no accounting made for the absence of the recorder of the statement, whoever he may have been. The statement was being offered to prove a vital portion of the State’s case and while we realize that other circumstantial evidence presented at trial could have been used to prove intent, the contents of the notation were too damaging to the defense theory of accident to be categorized as harmless. The notation was testimonial in nature, rather than mere recordation of fact, and we must agree with appellant that using such a method to prove intent does not afford him the opportunity to test the contents of the statement or the circumstances under which it was made by questioning the individual who made the notation.
“The notation was, of course, multiple hearsay and as such it is “even more vulnerable to all the objections which attach to simply hearsay.” C. Cleary, McCormick on Evidence, § 246 (2d ed. 1972).
Id. at 974-75.
It is apparent that Mr. Fowler’s testimony is not only hearsay, it is multiple hearsay. The practical effect of this testimony was to permit Mr. Fowler to testify as to what his son, the victim, told him (through the use of a tape recording whose origin is unknown) that the appellant had said. Mr. Fowler was not present when the conversation occurred.
The harm suffered by the appellant in this case is as great as, if not greater than that which this Court addressed in Arthers, supra. In both instances, the accused was denied the right to confront and cross-examine the most damaging witness against him. In the case sub judice, however, there is no tangible evidence that the admission ever occurred. There is no tape recording in evidence, and no one but Mr. Fowler claimed to have seen or heard it.
In the instant case, the appellant raises a defense that she acted in self-defense. Clearly, the testimony that she allegedly stated that she had previously given the deceased a black eye and might kill him in the future was damaging to her defense.
The possibility of a different result is necessarily foreclosed by the rationale of our Supreme Court in Ex parte Marek, 556 So.2d 375 (Ala.1989), in which the Court abolished the tacit admission rule in Alabama. Implicit in Marek was the finding by the Court that such admissions, by their very nature, lacked trustworthiness. The trustworthiness of the appellant’s alleged admission in this case fails to rise even to the level of that of a tacit admission. The tape recording allegedly containing the appellant’s admission was not authenticated and, as it was lost prior to trial, its reliability cannot be tested.
For the reasons stated above, the judgment of the trial court is due to be reversed and this cause remanded for a new trial.
REVERSED AND REMANDED.
All the Judges concur.