Rel: November 21, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2025-2026

—————————————————

### SC-2024-0760

—————————————————

### Ex parte William Chad Randolph

### PETITION FOR WRIT OF CERTIORARI TO THE COURT OF CRIMINAL APPEALS

### (In re: William Chad Randolph

### v.

### State of Alabama)

### (Greene Circuit Court: CC-21-12; Court of Criminal Appeals:  CR-2024-0091)

MENDHEIM, Justice.

William Chad Randolph petitioned this Court for a writ of certiorari to review the Court of Criminal Appeals' decision in Randolph v State, [Ms. CR-2024-0091, Aug. 30, 2024] __ So. 3d __ (Ala. Crim. App. 2024) (an opinion authored by Judge Kellum in which three judges concurred in the result), which affirmed Randolph's conviction in the Greene Circuit Court ("the trial court") for first-degree rape. See Ala. Code 1975, § 13A-6-61(a)(1). We granted Randolph's petition to consider whether the Court of Criminal Appeals' decision conflicts with Naylor v. State, 108 So. 3d 1063 (Ala. Crim. App. 2012), regarding the admission, over Randolph's objection, of lay-witness testimony on the ultimate issue in the case. We reverse and remand.

Except to the limited extent necessary to understand our rationale, we see no need to repeat the discussion of the evidence presented at trial, which is reflected, for the most part, in the main opinion and in Judge Cole's dissent in Randolph. See Randolph, __ So. 3d at __ (Cole, J., dissenting). Randolph was convicted and sentenced for the rape of H.S., his 16-year-old niece; Randolph's wife is the sister of H.S.'s mother. Randolph, who was 45 years old when the alleged rape purportedly occurred, resided in Walker County, as did H.S. The alleged rape

purportedly occurred in September 2020 at Randolph's fish-camp trailer, which is located in Greene County, after he and H.S. had been fishing for several hours. No physical evidence of the alleged rape was presented at trial, and the State's case against Randolph centered on the credibility of H.S., who testified at trial along with other witnesses who received information directly from or derived from H.S.

Several days after the alleged rape, Randolph turned himself in to Greene County Sheriff's Deputy Melvin Smith, who had contacted Randolph and informed him that a warrant for his arrest had been issued based on H.S.'s allegations. Beginning in April 2021, Randolph began requesting that the State disclose the name of any expert witness that the State intended to call as a witness at trial and the subject matter, facts, and opinions regarding which any such expert might testify. Trial was eventually scheduled to occur on June 26, 2023.

On June 2, 2023, Randolph filed a motion to compel requesting that the State be required to satisfy his outstanding discovery requests, which included the April 2021 motion seeking expert-witness disclosures. On June 25, 2023, Randolph filed a motion to suppress requesting that the State not be permitted to introduce as evidence or reference any

document or tangible thing that had not been produced to Randolph before he filed that motion. The motion to suppress referenced, in part, Randolph's attempts to require the State to disclose the identity of any experts and the substance of any expert's anticipated testimony.

Before the trial began on June 26, 2023, a hearing was held regarding Randolph's motion to suppress and a motion in limine that he had filed and orally had amended. During that hearing, Randolph's counsel stated that he had received and listened to a Child Advocacy Center ("CAC") forensic interview of H.S. that had occurred several days after the alleged rape. Randolph's counsel stated that he had recently been made aware that Tonya Blaze, an employee of the Walker County Department of Human Resources ("DHR") who had observed the forensic interview, had been subpoenaed to testify for the State and that he was

> "not asking for the Court not to allow her to testify. Substantively I don't know what she can testify to that is not hearsay. … So if she goes to testify to anything that [H.S.] told her, that's all hearsay because she's not a party opponent. They're calling her as their witness. I'm not calling her as mine, number one.
>
> "Number two, if they're calling her for the indirect purpose of asking her did she believe this witness, that's a direct violation or invading the province of the jury. The Court is aware of that. Even the Court can't say yes ma'am, I believe you.

4

"....

"[Counsel for the State]: … In terms of her testimony, Your Honor, we don't intend to ask her anything that's improper. We do think that we should be allowed to put her on the stand to show that an investigation was done. As the Court can appreciate, juries expect that to happen, as [Randolph's counsel] just alluded to previously. That will be our purpose. We will ask her what her investigation consisted of. We have no intention of asking her to respond to any questions that would violate the hearsay rule. We're simply going to ask her what she did and what her investigation consisted of.

"THE COURT: All right.

"....

"[Randolph's counsel]: One last issue as it relates to her, Your Honor. … DHR makes findings indicated or not indicated. That is not a judiciary finding at all. I don't even know what the true burden is. I'm guessing preponderance of the evidence or somebody just feels sufficiently satisfied. But that is not a judiciary finding. And even if it had been a judiciary finding, it would be at a lower standard than beyond a reasonable doubt. Whatever it is, it's below that standard.

"So she cannot come in and say that DHR determined that they think he did it. It continues to invade the province of the jury, and that part of her testimony absolutely has to be precluded, Your Honor.

"....

"[Counsel for the State]: Your Honor, we totally disagree with the defense's position on that. DHR has a function. Their function is to investigate any reports that

5

they receive that involve child neglect or child abuse or sexual abuse. That's what they do. Part of their process and part of their investigative process is to reach a decision. And in this case, they did.

"Of course, [Randolph's counsel] knows that they indicated this report that they did and this investigation they did involving his client, which, again, is why we're being asked again to exclude something that is detrimental to his client. I do not think it invades the province of the jury to reach a determination of guilt or innocence in this case, and I think it is improper to preclude Ms. Blaze from being able to communicate to this jury what her conclusion was at the end of her investigation.

"I don't see the basis for excluding that. We're not saying it's guilty or not guilty. We're just saying what was the result of your investigation.

"THE COURT: All right I'll withhold ruling on it until we get to that point and then make a decision."

Trial was held on June 26, 2023, and June 29, 2023. Blaze testified for the State and stated that she was the supervisor for adult protective services for DHR and had been working for DHR for three years. Blaze stated that she had a bachelor of arts degree in social work; that she was a certified social worker and had regularly participated in continuing education (including attending child-abuse seminars and conferences); and that, before becoming a supervisor, she had been a child-abuse-and-neglect investigator for DHR.

6

Blaze testified that in September 2020 she was involved in a DHR investigation into an incident involving Randolph and H.S., who was described as the "victim" in relation to Randolph. Blaze testified that the investigation had involved allegations of "[s]exual abuse, sexual penetration," and had included interviewing H.S., H.S.'s mother, and H.S.'s maternal grandmother. Blaze also stated that she had attempted to interview Randolph multiple times but that his attorney would not permit it.[1] Blaze testified that she had observed but had not conducted the forensic interview of H.S., which had occurred at the Walker County CAC.

Blaze stated that, after her investigation was complete, she had arrived at a disposition. When counsel for the State asked Blaze what that disposition was, Randolph's counsel objected "to the disposition being spoken to on all the bases that we had before," and the trial court overruled that objection. Counsel for the State again asked Blaze about the disposition, and Randolph's counsel objected, stating, "again, we object to that. It's invading the province of the jury," and the trial court

_____

[1]During the hearing on Randolph's motion in limine, the trial court denied Randolph's request to prohibit Blaze from testifying about his refusal to speak with Blaze.

7

again overruled the objection. The following colloquy then occurred between counsel for the State and Blaze:

> "Q: What was your disposition, Ms. Blaze?
>
> "A: Indicated for sexual abuse.
>
> "Q: And when you say you disposed of this case by it being indicated, can you explain to the ladies and gentlemen of the jury what that means?
>
> "A: Indicated meaning we found enough evidence to support the allegations."

After Blaze's direct examination, Randolph's counsel cross-examined Blaze regarding the standard of proof used for the purpose of making the disposition, among other matters. Thereafter, on redirect examination by counsel for the State, the following colloquy occurred after Blaze again testified that she had not been able to interview Randolph:

> "Q: Did you find sufficient evidence to indicate these allegations?
>
> "A: Yes, sir.
>
> "Q: And contrary to how it was being asked by defense counsel, it wasn't just because there was just a tiny bit more than not, right?
>
> "[Randolph's counsel]: Objection to leading.

"THE COURT:  All right.  Don't lead.  Go ahead.

"By [counsel for the State:]

"Q:  Did you understand my question, Ms. Blaze?

"A:  I believe so.

"Q:  Was it just a fraction more that put you over?

"A:  No, sir."

Randolph filed an oral motion for a judgment of acquittal at the close of the State's case, which the trial court denied, after which Randolph presented no further evidence.  Thereafter, while discussing jury charges, Randolph requested a jury instruction regarding expert testimony, referencing Blaze's testimony.  Specifically, Randolph's proposed jury instruction no. 12 included statements that the jury could "consider each expert opinion received in evidence in this case and give it such weight as you may think it deserves" and that the jury "d[id] not have to accept as true[] the opinion of any expert that testifies."  As to the requested instruction, the following colloquy occurred:

> "[The trial court]:  12 you've got experts.  I don't recall that we had -- am I forgetting somebody that may have been an expert?
>
> "[Counsel for the State]:  I don't think that's an issue.

"[Randolph's counsel]: The only reason that we inserted that is two-fold, Judge. Initially I didn't know what the evidence would hold, and two, he did put his DHR worker up on the stand, embellished her a little bit about her specialty as far as interviewing goes.

"[Counsel for the State]: Judge, I didn't ask the Court to recognize her as an expert[;] I did not call her as an expert. I understand what [Randolph's counsel] is saying, but there's no reason to charge the jury on experts because we didn't have any expert witnesses."

The trial court then denied Randolph's requested jury instruction regarding expert testimony, over the objection of Randolph's counsel.

After the trial court instructed the jury, the jury returned a guilty verdict, and the trial court scheduled a sentencing hearing, after which it sentenced Randolph. Randolph timely filed a motion for a judgment of acquittal or, in the alternative, for a new trial. He alleged, in part, that the trial court had erred by allowing Blaze, as a lay witness, to "offer[] conclusory testimony on the ultimate issue" and invade the province of the jury. See Rule 704, Ala. R. Evid. ("Testimony in the form of an opinion or inference otherwise admissible is to be excluded if it embraces an ultimate issue to be decided by the trier of fact."); see also Advisory Committee's Notes to Rule 704 ("The basis for the preclusion is the fear that the admission of such an opinion will preempt the role and function

10

of the factfinder."). The trial court denied Randolph's motion, and he appealed. As noted above, the Court of Criminal Appeals affirmed. See Randolph, supra. We granted certiorari review to consider the issue whether the Court of Criminal Appeals erred by rejecting Randolph's argument that the trial court had erred by admitting, over his objection, Blaze's lay-witness testimony that Randolph had sexually abused and sexually penetrated H.S.

We will address two preliminary matters before discussing the merits. First, the State contends in its appellate brief that,

> "[a]t the outset, this case is a poor vehicle to decide the question presented because the fractured decision below means there are many different reasons why the appellate court could have affirmed Randolph's conviction. Randolph takes aim only at Judge Kellum's opinion, but that opinion does not constitute the 'decision' that Randolph argues conflicts with prior decisions of the Court of Criminal Appeals."

We disagree. The fact that only one judge concurred in the rationale expressed in the Court of Criminal Appeals' main opinion in Randolph does not mean that the majority's decision to reject Randolph's argument regarding the admission of Blaze's testimony and to affirm the trial court's judgment does not conflict with existing precedent, specifically Naylor. Naylor accurately reflects Alabama law regarding ultimate-

11

issue testimony from a lay witness.[2]   In comparison to <u>Naylor</u>, either trial-court error exists in the present case, was preserved, and is reversible or not.   There is no unsolvable legal mystery here simply because a majority of the judges on the Court of Criminal Appeals agreed to reject Randolph's argument without stating why.

Second, despite the State's contention in its appellate brief to the contrary and Judge Kellum's opinion in <u>Randolph</u>, the present case does not concern expert testimony or the limits on such testimony.   Thus, we will not address those issues.[3]   As the above discussion reflects, Blaze did not testify as an expert and the trial court did not exercise discretion to treat her as an expert.   Instead, the State took the position that Blaze --

---

[2]Our opinion should not be read as approving the rationale in <u>Naylor</u> except to the extent expressly discussed in this opinion.   See <u>Naylor v. State</u>, 108 So. 3d 1078, 1079 (Ala. 2012).

[3]This Court has acknowledged that

"[t]he confusion and feelings of shame and guilt associated with sexual abuse of children are beyond the ken of the average juror.   Therefore, expert testimony should be allowed to explain the emotional effects of sexual abuse upon an adolescent, so that the triers of fact may appropriately draw conclusions from the testimony."

<u>Ex parte Hill</u>, 553 So. 2d 1138, 1139 (Ala. 1989).

its witness -- was a lay witness, and the trial court treated Blaze as a lay witness.[4] Doing so was not legal error because no law required the State to offer Blaze's testimony as expert testimony or required the trial court to treat Blaze as an expert witness despite the State's position at trial. The only issues that we must decide are whether error occurred as to the admission of lay-witness Blaze's testimony on the ultimate issue, over Randolph's objection, and, if so, whether any such error was harmless error under the facts before us. See Rule 45, Ala. R. App. P. (harmless-error rule).

As to the former issue, Randolph raised a timely objection, and we agree with Judge Cole, who stated:

---

[4]Converting Blaze to an expert witness -- contrary to the State's position at trial and the ruling of the trial court as to Blaze's status -- would result in error regarding the denial of Randolph's request for a jury instruction as to the consideration of expert testimony. See Weeks v. State, 580 So. 2d 79, 81 (Ala. Crim. App. 1991) ("'[O]ur decisions are to the effect that every accused is entitled to have charges given, which would not be misleading, which correctly state the law of his case, and which are supported by any evidence, however weak, insufficient, or doubtful in credibility.' Ex parte Chavers, 361 So. 2d 1106, 1107 (Ala. 1978). Because the trial court failed to instruct the jury on the weight to be given the testimony of the expert, the judgment of the circuit court is reversed and this cause is remanded for further action not inconsistent with this opinion.").

"It is clear that '[t]estimony in the form of an opinion or inference otherwise admissible is to be excluded if it embraces an ultimate issue to be decided by the trier of fact.' Rule 704, Ala. R. Evid. …

"This case is similar to the situation addressed by this Court in Naylor v. State, 108 So. 3d 1063 (Ala. Crim. App. 2012).[5] Naylor argued that the opinion testimony of three witnesses who testified during his trial violated Rule 704, Ala. R. Evid., and improperly addressed the ultimate issue in the case. After noting that it was unclear whether any of the witnesses testified as experts, this Court held:

"'….

"'During redirect examination by the State, [Lawrence County Sheriff's Department Investigator Mike] Agee was permitted to testify, after repeated objections by Naylor: "My opinion is [B.J.] was a victim of sexual assault by her stepdad." (Emphasis added.) During direct examination by the State, [Jennifer] Owens[, who was a child-abuse investigator for the Lawrence County DHR and had investigated B.J.'s allegations against Naylor,] testified, over objection, "I did believe that [B.J.] was a victim of sexual abuse." Monica Haddock[, who worked for an agency that conducted forensic interviews of children who allegedly had been abused,] testified, also over defense objection, "I feel like she was a victim of a traumatic event, that being sexual abuse that she disclosed." (Emphasis added.) …

_____

[5]Jason Bart Naylor was charged and convicted of rape, sodomy, and incest based on his allegedly having had sexual intercourse and deviant sexual intercourse with his minor stepdaughter, B.J. Naylor, 108 So. 3d at 1064. Like Randolph, Naylor was not charged with "sexual abuse."

14

"'Naylor argues that testimony from Inv. Agee, Owens, and Haddock was improper because, he argues, it embraces the ultimate issue and violated Rule 704, Ala. R. Evid. …

"'….

"'Inv. Agee, Owens, and Haddock testified as lay witnesses, and they had no firsthand knowledge of whether B.J. was sexually abused by Naylor. …

"'We note, furthermore, that the testimony of Inv. Agee and Haddock embraced the ultimate issue. "An ultimate issue has been defined as the last question that must be determined by the jury. See Black's Law Dictionary (5th ed. 1991)." Tims v. State, 711 So. 2d 1118, 1125 (Ala. Crim. App. 1997). Rule 704, Ala. R. Evid., states: "Testimony in the form of an opinion or inference otherwise admissible is to be excluded if it embraces an ultimate issue to be decided by the trier of fact." The Advisory Committee Notes to Rule 704 explain that "[t]he basis for the preclusion is the fear that the admission of such an opinion will preempt the role and function of the factfinder." … The State concedes that Inv. Agee's testimony embraced the ultimate issue. However, the State argues, incorrectly, that Haddock did not testify about whether Naylor was the perpetrator of the sexual abuse she believed B.J. had suffered. Haddock clearly testified that she believed that B.J. had been the victim of the "sexual abuse that she disclosed." (Emphasis added.) B.J. never alleged that anyone other than Naylor had sexually abused her; therefore, Haddock's testimony clearly implicated Naylor as the

15

perpetrator of B.J.'s abuse, and that testimony, too, embraced the ultimate issue. …

"'… [T]he testimony from Inv. Agee and Haddock gave unwarranted and legally impermissible stamps of approval to B.J.'s allegations that Naylor had sexually abused her, and thus usurped the jury's function to decide the ultimate issue. …'

"Naylor, 108 So. 3d at 1073-76 (footnote omitted).

"Like the victim in Naylor, H.S. implicated one person -- Randolph. Blaze testified that DHR had determined that the allegations made by H.S., which were against only Randolph, were supported by the evidence. In other words, DHR determined that, based upon its investigation, which included factors not considered by the jury, H.S.'s allegations implicating Randolph were true. Blaze's testimony not only gave her 'stamp[] of approval' to H.S.'s testimony, but the 'stamp[] of approval' of the entire Alabama Department of Human Resources. Blaze's testimony violated Rule 704, Ala. R. Evid., and was an inadmissible opinion as to the ultimate issue in the case."

Randolph, __ So. 3d at __ (Cole, J., dissenting) (citations to record and to briefs omitted). Having determined that the trial court erred by allowing lay-witness Blaze to invade the province of the jury by testifying on the ultimate issue, we must consider the issue whether the admission of that testimony probably injuriously affected Randolph's substantial rights. See Rule 45.

16

The harmless-error rule has been applied to the admission of inadmissible evidence, over a defendant's objection, when the inadmissible evidence was irrelevant, innocuous, or cumulative. See, e.g., Ex parte Brownfield, 44 So. 3d 43, 50 (Ala. 2009). This Court also has stated that the harmless-error rule may be applied when the evidence of the defendant's guilt is overwhelming, see id., but we have acknowledged that "'the proper inquiry here is not whether evidence of the defendant's guilt is overwhelming but, instead, whether a substantial right of the defendant has or probably has been adversely affected.' Ex parte Lowe, 514 So. 2d 1049, 1050 (Ala.1987)." Ex parte Jackson, 68 So. 3d 211, 216 (Ala. 2010); see also Ex parte Phillips, 962 So. 2d 159, 163 (Ala. 2006) ("[E]ven '[o]verwhelming evidence of guilt does not render prejudicial error harmless under Rule 45[, Ala. R. App. P.]' [Ex parte] Hutcherson, 677 So. 2d [1205,] 1209 [(Ala. 1996)]; and Ex parte Lowe, 514 So. 2d 1049, 1050 (Ala.1987). See, also, Ex parte Greathouse, 624 So. 2d 208, 211 (Ala.1993) (acknowledging the possibility that prejudicial error could be harmless, however, when the evidence of the defendant's guilt is 'virtually ironclad').").

As noted above, the State offered no physical evidence indicating that Randolph had "[e]ngage[d] in sexual intercourse with [H.S.] by forcible compulsion." § 13A-6-61(a)(1). For example, the State presented no DNA evidence and no evidence of bruising on H.S. or Randolph despite the alleged struggle in the trailer between H.S. and Randolph. Also, no third-party witness testified that he or she had observed the alleged rape or physical evidence of a rape. Instead, the State's case was based on H.S.'s testimony and the testimony of other witnesses, who in turn had relied on what H.S. had stated to them after the alleged rape had purportedly occurred. Although there was testimony that Randolph remained silent and left his house (at his wife's request) when H.S.'s mother confronted and attacked him a few days after the alleged rape, that he did not participate in DHR's investigation on advice of counsel, and that he turned himself in to Deputy Smith at the fish-camp trailer where H.S. claimed the towel she had used to clean herself had been, the import of those actions for purposes of his criminal trial depended on the veracity of H.S.'s allegations.[6]

---

[6]In Ex parte Marek, 556 So. 2d 375 (Ala. 1989), this Court abolished the tacit-admission rule, which provided that "'silence under accusation is some evidence from which the jury may infer that the accused

As to H.S.'s testimony, although the jury may have determined that she was credible in the absence of Blaze's testimony, there also was evidence that would support questioning H.S.'s credibility, and the fact that Randolph did not testify made the issue of H.S.'s credibility even more important. H.S. and her mother testified that H.S. had been mad at her mother in the summer of 2020, after H.S.'s mother and father had separated. H.S. eventually was adjudicated as a child in need of supervision and was still subject to supervision by the juvenile court when the alleged rape purportedly occurred. H.S. testified that her relationship with her mother had improved before the alleged rape, but H.S. admitted that she had lied to her mother during the period before the alleged rape. Likewise, H.S.'s mother admitted that, before the

_____

acquiesced in the statement and admitted its truth.'" Id. at 380 (quoting Clark v. State, 240 Ala. 65, 69, 197 So. 23, 27 (1940). In so doing, we noted that "neither logic nor common experience any longer supports the tacit admission rule, if, indeed, either ever supported it," and that the use of silence to support an inference of guilt could not withstand scrutiny. Id. at 381. See also Fowler v. State, 562 So. 2d 666, 669 (Ala. Crim. App. 1989) ("Implicit in Marek was the finding by the Court that such admissions, by their very nature, lacked trustworthiness."). Further, even under that rule, it had been held that, "where it would be one's duty or nature to speak and there is an opportunity to speak, silence is evidence, though slight in weight." Kennedy v. State, 39 Ala. App. 676, 681, 107 So. 2d 913, 918 (1958).

alleged rape, she had texted Randolph's wife that H.S. was "messed up and just tells lies for no reason." Also, there was at least one inconsistency between what H.S. testified happened in regard to the alleged rape and her mother's testimony about what H.S. had told her over the course of two days after the alleged rape. H.S. testified that Randolph had approached her, wearing "nothing but his underwear," after he had taken a shower and that, after the alleged rape, he had retrieved his wet towel from the bathroom for her to clean herself up. According to H.S.'s mother, however, H.S. told her the day after the alleged rape that Randolph had "come out of the bath with a towel wrapped around him" when he first approached H.S. Further, H.S. admitted that her counselor would not listen to her -- "kind of kept rushing it off" -- when H.S. had attempted to describe the alleged rape to her two days after it purportedly occurred. Also, H.S.'s mother testified that she had been troubled about H.S. lying to her counselor.

Further, Blaze was the only person who testified regarding the disposition of the DHR investigation implicating Randolph as a perpetrator of sexual abuse and sexual penetration of H.S. We cannot conclude that her testimony was irrelevant, innocuous, or cumulative.

20

And based on the record and pertinent precedents, we likewise cannot conclude that Randolph's substantial rights were not prejudiced by the admission of Blaze's inadmissible testimony, which Randolph's counsel attempted to mitigate by questioning Blaze about the burden of proof she applied but that the State then emphasized. See Naylor, supra; see also Frye v. State, 185 So. 3d 1156, 1167-68 (Ala. Crim. App. 2015) (concluding that the admission of A.A.'s inadmissible testimony of prior bad acts was not harmless when "the ultimate issue at trial was whether the sexual intercourse and deviate sexual intercourse between A.A. and Frye was achieved by forcible compulsion," there was no direct or conclusive evidence of forcible compulsion, and "[t]he outcome of the case … depended essentially on the jurors' perceptions of the witnesses' credibility"); Sheffield v. State, 248 So. 3d 38, 48 (Ala. Crim. App. 2017) ("The ultimate issue at trial was whether Sheffield acted in self-defense when he shot and killed McMillian. Sheila's [inadmissible] hearsay statements directly rebutted Sheffield's self-defense claim, indicating that Sheffield was jealous and that he had no justification for shooting McMillian. Although the State presented a strong case of guilt, we cannot say that the State's evidence of Sheffield's guilt was so

21

overwhelming as to render harmless the improper admission of Sheila's statements accusing Sheffield of intentionally killing McMillian without proper justification.").

Based on the foregoing, we conclude that the Court of Criminal Appeals' rejection of Randolph's argument is in conflict with Alabama law regarding lay-witness testimony on the ultimate issue, as discussed in Naylor, and that the admission of Blaze's inadmissible testimony was not harmless error. Accordingly, we reverse the Court of Criminal Appeals' decision and remand the case for proceedings consistent with this opinion.

REVERSED AND REMANDED.

Stewart, C.J., and Wise, Bryan, Sellers, and Cook, JJ., concur.

Shaw, J., concurs in the result.

McCool, J., recuses himself.